The State vs. Wolff.

THE STATE OF MISSOURI, RESPONDENT, vs. WOLFF, APPELLANT.

1. When various articles of property, other than those mentioned in the indictment, are found in the defendants possession, there may be some pretext for proving them to be stolen, in order to fix a guilty knowledge upon him; but, when the things stolen were found in the possession of another, with whom the defendant had been living a short time, as a hired hand, such evidence is not admissible.

2. It is improper to admit illegal evidence against the accused, in spite of his objections, and after it may have impressed the jury unfavorably towards him, to attempt a reparation by instructions.

3. Possession of stolen property, after the theft, to raise a presumption of guilt, must be recent. Possession at "any time" will not raise the presumption. "Any time" may refer to a period too remote; it must be recent.

## APPEAL from St. Louis Criminal Court.

### STATEMENT OF THE CASE.

This was an indictment against Michael, Christopher, and Valentine Wolff and Josephus Pennel, for grand larceny of oats and glass; and the defendants were also charged upon the second count, with receiving the same, knowing them to have been stolen. The defendants, Christopher and Valentine Wolff severed, and were tried separately from Michael Wolff. The evidence went to show, that various articles of personalty had been lost and stolen from a certain neighborhood, and that many of these articles were found in the house at which the defendant, Chris. Wolff, and Pennel were found. On the trial, defendant offered co-defendant, Michael Wolff as a witness in the cause, and the State objected, and the objection was sustained by the court. The defendant below prayed the court for a new trial, which was overruled by the court, excepted to by the defendant, and an appeal taken to the supreme court.

BLENNERHASSETT & SHREVE, for appellant.

I. The appellant prays this court to revise and remand this cause.

1. Because the evidence was insufficient to warrant the verdict. It will be seen by that evidence, that four persons were indicted, wholesale; that one was never arrested, and that against two of the others there was not a title of evidence; and that against the one committed, Christopher, the only evidence was, that when he saw several officers approaching him, while at work, chopping wood, he ran; but when arrested, and asked why he ran, said because Pennel told him to do so.

2. Because the property charged to have been stolen, was found with other stolen property, at the house at which the defendant Christopher was, although it is shown that he had been there but a short time, and in the capacity of a hired hand. It is insisted that this court will, and properly may revise a verdict, manifestly contrary to evidence, or when the evidence is so utterly insufficient that it can be easily gathered from the case, that prejudice had much to do with the verdict. Large amounts of property of various kinds, are shown before the jury to have been stolen, although objected to by the defendant below; all well calculated to prejudice, while it furnished no legal evidence of defendant's guilt.

II. The appellant, for second cause of error says, the court erred in its instructions given and refused. The court first permitted improper evidence to go to the jury, and after it has had the only effect that it could have had, to wit: to prejudice the defendant's case before the jury, attempts to cure the error by instruction. Such a course deprives the defendant of a fair trial, and he therefore objects to the first instruction. "The jury will disregard all testimony relating to other property than that set forth in the indictment, which was not proved to be stolen property." The second instruction given by the court is absurd. Two defendants are upon trial, and the court instructs the jury that if either of the defendants did steal, take and carry away, &c., that they ought to find the defendant guilty, &c., see second instruction given.

The 4th instruction assumes, that if the defendant ever had possession of any of the property charged, he is bound to account for that possession. This instruction precludes the right of the defendant to have possessed the property, however honestly, even before it is alleged to have been stolen. It also throws the burden of proof on the defendant to explain the possession, not only if he had it himself, but if another person (Pennel) had.

It is suggested that the supreme court might learn the inferior court some fitness of expression, that juries might not be ever misled by the unfortunate phraseology of the officer authorized to instruct.

The instruction asked by the State's attorney, "that if they believe one of the defendants guilty, they can state so, though they cannot agree as to the guilt of the other." The supreme court have repeatedly decided that it is error to instruct the jury that they can find a defendant guilty without assigning the punishment: Rev. Code, 1835, page 493; McGhee vs. the State, 8 Mo. Rep. 495 and subsequent.

The defendant is unable to find any legal objection to the first instruction asked for, but great propriety. The overruling of the second instruction asked by defendant, was error, and fatal to the case. The court thereby, in effect, say to the jury, that although the house and premises upon which the stolen property was found, belonged to another, yet, if the defendant was hired to him, that is sufficient evidence to convict the defendant; a strange *sequitur*.

III. The third error assigned, is the exclusion of the testimony of the witness Michael Wolff and Valentine Wolff, jointly indicted (as any one else might have been,) but who severed on the trial. For a series of years, this point was considered settled in this State, by the decision in the 6 Mo., and up to the present case, the courts have uniformly, in obeisance to that decision allowed a co-defendant, not upon trial, to testify; and the court in which this case was tried, in trying the case which immediately preceded it, after debate upon the point, decided that a co-defendant, not upon trial, could testify, and did so testify in the case of the State vs. Prouge, for an assault to kill; but the same court denied the right in the case at bar. The counsel are at a loss to discover the reason, except the reason be without a difference. We are aware that the question has been somewhat vexed, and differently adjudicated, but think, aside from its absolute settlement in our

The State vs. Wolff.

own reports, that reason and justice warrant the right; and, perhaps, no case can be found, where a co-defendant has been acquitted, solely upon another defendant's testimony. The State is allowed to use a co-defendant to testify against a co-defendant, and a premium offered him to do so—his own liberty, which is always given, if he swear with skill and ability against his co-defendant. And shall it be said we are retrograding in the merciful administration of the law? But again, is it not apparent how oppressive the rule enforced may be? The State can indict every one present, who would aid to establish the innocence of the defendant, and thus deprive every one of testimony in his behalf, and then use others to convict. The counsel have known most flagrant cases to occur in the exercise of this power. On the other hand, the right given, at best, places a co-defendant's testimony as doubtful, and it goes for what it is worth, but may sometimes serve to expose what could be known in the nature of things, to no other person. The court is referred to 6 Mo. Rep. 1, Garret vs. the State.

IV. The fourth error assigned is, that the court below should have granted the defendant a new trial. If there be any force in the positions assumed by the defendant, then the court erred in refusing a new trial; but especially, when the "newly discovered evidence" was presented to the court, the purtenance and importance of which will be shown by reference.

AUTHORITIES CITED.—1 McMally 55, Rex vs. Ellis; Russel page 597; 1 Kelly 617, Georgia; Roscoe's Ev. 5, Esp. 154; 1 Chitty 605; Ros. 118; 2 Rus. 597; 2 Hale 218, 305; United States vs. Henry, 4 Wash. 429.

LACKLAND, for the State.

I. The court did not err in admitting testimony to show that the defendant had possession of stolen goods, other than those mentioned in the indictment. The defendant was charged with the larceny of the property mentioned in the indictment, and also with receiving the same, knowing them to have been stolen. For the purpose of establishing guilty knowledge, it is competent to prove that the defendant received other stolen property, besides that mentioned in the indictment. Wharton's Cr. L. page 418; Rex vs. Dunn, 1 Mody C. C. 146; Rex vs. Davis, C. C. and P. 177; 2 Russ. on Cr. 251.

II. The court did not err in refusing to allow the witness Carlan, to state under what circumstances he saw defendant at various points of the city of St. Louis, or what he was doing, because this was entirely irrelevant. Such evidence is inadmissable, to prove general reputation for honesty or good character. It is general reputation among those who know defendant, that constitutes general character, and this cannot be proved by proving particular facts, as where defendant was seen, and what he was doing: Wharton's Cr. L. 171; 2 Phil. Ev. 469; 2 Stark. Ev. 304; 1 Y. and R. 754.

III. There was no error committed by the court in refusing to give instructions asked by the defendant.

1. The record does not show that any election was made, as is stated in said instruction. So far as that is concerned, the construction merely presents an abstract principle of law, not applicable to the case, if correct: 6 Mop. 6; 10 Mo. 354.

The latter part of the instructions set forth the proposition, that the defendant cannot be guilty unless he actually stole; negativing the idea of all constructive stealing.

2. For the same reason, the second instruction asked for by defendant, was righfully refused. There was no proof tending to show that the defendant was the hireling of Pennel; and the court is not required to declare the law arising upon an assumed state of facts, when there is no proof tending to establish them. Suppose he was the hireling of Pennel, and stole for a stipulated price per day or month, having no interest, directly in the property stolen, this, it seems to us, would be larceny. The instruction does not, therefore, contain good law if it were applicable.

IV. The court properly refused to allow the witness, Michael, and Valentine Wolff to testify for defendant, because they were jointly indicted with defendant, and were parties to the record, and therefore incompetent: People vs. Williams, 19 Wend. 377; State vs. Mills, 2 Dev. 420;

The State vs. Wolff.

Campbell vs. Com., 2 Vir. cases, 314; Com. vs. Marsh et. al., 10 Pick. 57; People vs. Bill, 10 John's Rep. 95; State vs. Carr, 1 Cox's N. J. Rep. 1; Chapman vs. Graves, 2 Campb. 333; Rex vs. Loker, 5 Esp. Rep. 107; Rex vs. Lafone, 5 Esp. R. 154; Rex vs. Rouland, 5 Ry. and Mov. 401 (21 Eng. C. L. Rep. 471;) 1 Yerger 431; McMillan vs. State, 13 Mo. 84; 1 Phil. Ev. 6 Am. Ed. from 9 Lond. 67; Wharton Cr. Law 210; State vs. Calvin, 1 R. M. Chartt 151, 169; State vs. Smith, 2 Iredell 402.

V. The court properly refused to grant a new trial, upon the ground of newly discovered testimony, for the following reasons:

1. The testimony does not appear to be newly or after discovered. Defendant must have known of it before the trial. By his affidavit, the only thing that is newly discovered is the whereabouts of the witness, Mrs. Pennel. If the witness could not be found, defendant ought to have applied for continuances. The evidence, and not the whereabouts of a witness must have been discovered before the trial: Wharton Cr. L. p. 658; Vandervest vs. Smith, 2 Cain's Rep. 155; Rogers vs. Simons, 1 Rep. Cin. Ct. 143.

2. Defendant's affiant discloses that he knew of the witness before the trial, and must have known what she could testify to, but does not aver that he used diligence to ascertain her whereabouts. This is fatal to the application. Hanly vs. Blanton, 1 Mo. Rep. 38; Smith vs. Matthews, 6 Mo. 600; State vs. Harding, 2 Bay 267; Com. vs. Drew; 4 Mass. 399; Wharton's Cr. L. 659.

3. The affiant states that the defendant *has learned* that Mrs. Pennel could prove &c. It ought to state that defandant *believed* she could state &c.; and accompanied it with an affidavit statement of the witness: Whart. Cr. L. 657-8, and authorities there cited.

4. "The rule, in general, will not be granted, if only supported by the affidavit of the party or some one interested. The motion must be accompanied by the affidavit of the newly discovered witness:" Webber vs. Tres., 1 Tyler 441; Noryce vs. Huntington, Kirby 282.

5. The adverse party may show, by affidavits, that the newly discovered witnesses are unworthy of credit. Williams vs. Baldwin, 18 John 489; Pomeroy vs. Columbian Ins. Cc. Caine's Rep. 260; Parker vs. Hardy, 24 Pick. 246; and how can this be done, unless the newly discovered witnesses disclose by affidavit the matter expected to be proved by them.

RYLAND, J., delivered the opinion of the court.

This was an indictment against the defendant, Christopher Wolff, and three others. The present defendant was tried and found guilty, and sentenced to the State Prison. He moved for a new trial, which being overruled, he brings the case to this court by appeal.

The errors assigned, mainly question the judgment of the Criminal court, in giving instructions, and in refusing to give instructions; in admitting improper testimony; in excluding, as incompetent, a co-defendant as a witness for the defendant, and in refusing to grant a new trial.

I will set out the various instructions offered in this case, as well those refused as those given, and give my opinion on them.

There were two counts in the indictment, one for stealing and the other for receiving stolen property.

The property charged to have been stolen, was a quantity of oats in the bundles, and a quantity of window glass. The property charged

to have been received, as stolen, was of the same kind as that mention-
ed in the first count, oats and glass.

There was testimony tending to show, that the property stolen was
traced to a house occupied by one Pennel, a co-defendant indicted with
the present defendant.   The property, that is, the oats were found the
morning after they were stolen, in the yard at Pennel's house; traced
there by the loose straw that had fallen, in the act of being carried
along the road, as well as by the impression, or track of the wagon
wheels.

When the officers of the law were approaching the house, Pennel and
Wolff both ran.   Wolff was caught, but the other escaped.   When
overtaken, Wolff said that Pennel told him to run.   There was testi-
mony tending to prove, that Wolff was a person who hired himself to
work; and that a short time, only, previous to this transaction, he had
gone to Pennel's to live.

The great body of the testimony, given in the case, relates to other
articles than those mentioned in the indictment.   Witness after witness
is examined, proving that wagons, wagon wheels, wagon tongues, bee
hives, honey, live geese, jack planes, straw cutters, buggy harness and
various other articles, were found at the house where Pennel and the
defendant lived.   These were taken to the calaboose; to which place
the owners came, time after time, and claimed and carried away their
property.   The defendant objected to the admission of this evidence,
but it was admitted and he excepted.

The court, at length, instructed the jury, to disregard all the evi-
dence in relation to any other property than that mentioned in the in-
dictment.   The defendant's counsel contends, and we think, very prop-
erly too, that this instruction has not and cannot do away with the ef-
fect that such evidence had on the jurors minds.

Had the State proven, that the property, recently stolen, was found
in the possession of the defendant, then there might be some pretext for
showing guilty knowledge in the defendant, that the property was stolen,
to prove, that in his possession were various other articles of stolen prop-
erty.   But the proof here is, that the house, where these things were
found, was in possession of Pennel; that defendant was living with him,
in all probability as a work hand, and had been living with him but a
short time.

It will not do to admit illegal evidence or irrelevant testimony against
the accused, in spite of his objections, and after such evidence has had
the effect to impress the jurors unfavorably against the accused, to at-
tempt to wipe out the injury by an instruction, calling on the jury to

disregard it. It has been said that "evil, in the mind of man, may come and go, so unapproved as to leave no stain behind," but an impression upon a juror's mind, made by illegal evidence, may have a powerful effect, in forcing that mind to an improper conclusion. The *corpus delicti* must be first proved, before such evidence can be admitted—must be first brought home to the defendant. As in an indictment for passing counterfeit money, after it has been proved, that the defendant passed the bank note as charged, and that the bank note was counterfeit, then the prosecution may prove various other acts of passing counterfeit money, in order to show the defendant's knowledge of the fact, that it was counterfeit.

The court gave the following, on its own motion:

1. The jury will disregard all testimony relating to other property than that set forth in the said indictment, which was not proven to be stolen property.

2. If the jury believe, from the evidence, that the defendants, or either of them, did steal, take and carry away any of the property charged as the property of Casper H. Strantman, of the value of ten dollars or upwards, and that they, or either of them, did so steal for the purpose of converting the same to *their* own use, you ought to find the defendant guilty of *grand* larceny, and assess the punishment to imprisonment in the Penitentiary for a term not less than two nor more than five years.

Possession of stolen property, not long after the theft, raises the legal presumption of guilt in the party having such possession, and it is for, him to account for such possession, to the reasonable satisfaction of the jury.

3. If the jury believe, from the evidence, that Christopher Wolff did live at the house leased by Pennel, and did at any time, either by himself or with Pennel, have possession of the property charged, and if the jury believe that said property was stolen property, the burden is thrown upon the defendant, Christopher Wolff, to account for such possession, to the resonable satisfaction of the jury.

4. If the jury entertain a reasonable doubt as to the guilt of either of the defendants, you ought to acquit such defendants.

5. If the jury have no reasonable doubt, as to the guilt of the defendants, or either of them, as charged in the first count, but cannot agree as to the measure of punishment, you can find the defendants or either of them guilty, without assessing the punishment.

The following instructions were asked on the part of the defendant, but were refused by the court:

1. The jury are instructed, that the State having elected the first count in the indictment, which charges the defendant with the felonious taking of the property mentioned, the jury will disregard all evidence of the stealing of any other property, except the property set forth in the indictment, to-wit, oats and glass. The jury cannot, therefore, convict, unless they believe from the evidence that the defendants, or either of them, did steal, take and carry away the property mentioned, from the possession of the owner of the same; and if the jury have a reasonable doubt, as to whatever the defendant, or either of them, did actually steal and carry away the property mentioned, they will acquit.

2. If the jury believe that Pennel hired or leased the house in question, and that Christopher lived with him, as a hired man, and that the property mentioned in the indictment was in said house, or in the stable or shed attached thereto, these facts do not, of themselves, prove that such property was in the possession of the said Christopher, and he is not called on to account for such property being there.

The first instruction of the defendant was properly refused, because the State had not, as appears by the record, made any election of the counts in the indictment, on which to rest the prosecution.

The second instruction asked by the defendant, might well have been given, and we think it ought to have been given.

I have already commented on the first instruction given by the court. It was right to give it; it was all the court could do to cure the injury done, but it did not then do away with the error.

The instruction given as number two is wrong in the phraseology in which it was given. This instruction says to the jury, that if they believe that the defendants, or either of them, did steal any of the property as charged, that they must find the *defendant guilty*. We do not suppose that the court intended to charge the jury, that if they believe from the evidence one man guilty, they might convict another and a different one. This is clearly wrong.

The third instruction given is also wrong. Possession of stolen property must be recent after the theft, in order to raise the presumption of guilt. Possession at *"any time"* will not raise the presumption. *"Any time"* may refer to a period too remote; it must be recent.

We find no fault with the other instructions. The point raised by the rejection of the co-defendant as a competent witness for the defendant, will be noticed in the case of Roberts vs. The State, now before us, and to be decided at this term.

Upon the whole case then, we think the court erred in admitting the testimony of the witness about other property than that charged in the

indictment; that the defendant's second instruction ought to have been given; that the third instruction given ought to have been refused, and that the fourth instruction is wrong in the words "possession *at any time.*"

For these errors, the judgment below is reversed, and the case remanded for further trial; the other Judges concurring.